UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILBERT MOORE /PRO SE

Write the full name of each plaintiff.

16CV 6317

N._____
(To be filled out by Clerk's Office)

-against-

JUDGE LORETTA PRESKA/SDNY
INDIVIDUALLY AND IN HER CAPACITY
AS A SDNY JUDGE

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☑ Yes   ☐ No

RECEIVED
SDNY PRO SE OFFICE
2016 AUG 9  PM 11:50

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/6/16

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☑ Violation of my federal constitutional rights

☑ Other:   VIOLATION OF THE USC'S TITLE 9 OF THE FAA

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

WILBERT                                        MOORE
First Name               Middle Initial          Last Name

N/A
State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

N/A
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

N/A
Current Place of Detention

N/A
Institutional Address

N/A
County, City                          State                    Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner          N/A
☐  Other:

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

LORETTA DRESKA
First Name          Last Name                    Shield #

SDNY JUDGE
Current Job Title (or other identifying information)

500 PEARL ST.
Current Work Address

NEW YORK          NY          10007
County, City                    State          Zip Code

Defendant 2:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State          Zip Code

Defendant 3:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State          Zip Code

Defendant 4:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State          Zip Code

## V.   STATEMENT OF CLAIM

Place(s) of occurrence:   SDNY

Date(s) of occurrence:   MARCH 31, 2004

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

SEE ATTACHMENT OF FACTS

## V.     STATEMENT OF CLAIM'S ATTACHMENT OF FACTS

Can a Federal Judge ignore a Federal Law without proving that they have jurisdiction or without giving a valid reason for doing so? The Southern District of New York's Judge Loretta Preska has been and is still ignoring "Rule 9 of the Federal Arbitration Act" without giving a reason for doing so. Judge Preska issued several Orders that recognize the fact that I won my Arbitration yet she allegedly refuses to obey "Rule 9 of the Federal Arbitration Act" without giving a legal reason for doing so (See "Exhibits 6, 7, and 8"). Rule 9 states:

> USC Title 9 Federal Arbitration Act. Award of the arbitrators; confirmation; jurisdiction; procedure
> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the Court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

End quote.

2. Can Federal Judges pick and choose which laws they will decide to obey? It's my understanding that Federal Judges take an oath to uphold the Constitution of the United Sates, and that it's the job of our Congress to make the laws, and according to the United States Supreme Court, it's unconstitutional and or traitorous to ignore the law (See "Exhibits 11 and 12")?

3. I'm also alleging that under Federal law, which is applicable to all states, the U.S. Supreme Court stated that if a court is "Without authority," its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828), and trespassers are not protected from civil liabilities (See "Exhibit 12").

4. It is also my understanding that according to "Black Letter Law," both "Personal and Subject Matter Jurisdiction" are required by the Courts. If in fact crimes were allegedly committed, then pursuant to "Title 18 U.S.C. §4," I'm exercising my Constitutional Right by reporting to you the alleged misconduct of the defendant Judge Loretta Preska. I'm alleging that Federal Judges have the statutory responsibilities under "18 U.S.C. § 1361" to receive evidence and to make a judicial decision whether an order should be made for a Federal Official to perform a mandatory duty and or to halt their alleged unlawful misconduct. I'm also alleging that pursuant to "U.S.C. Title 18 Section 241," my Civil Rights have been violated due to an on going conspiracy.

5. It is also my opinion that whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821). I'm alleging that either correctable mistakes were made or that the law is being treacherously ignored (See "Exhibit 12"). I'm respectfully requesting your assistance. Respectfully submitted, Wilbert Moore / Plaintiff Pro Se

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

I WOULD LIKE TO BE MADE WHOLE PLUS I WANT $14,000.000 IN PUNITIVE DAMAGES FROM LORETTA PRESKA INDIVIDUALLY, AND ANY OTHER RELIEF THE COURT DEEMS FAIR

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| AUG 9, 2016 | WilliMoore |
|---|---|
| Dated | Plaintiff's Signature |
| WILBERT | MOORE |
| First Name         Middle Initial | Last Name |

N/A
Prison Address

N/A
County, City                          State                          Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:    N/A

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

AUG. 9, 2016
_____
Dated

_____
Plaintiff's Signature

WILBERT
_____
First Name

_____
Middle Initial

MOORE
_____
Last Name

N/A
_____
Prison Address

N/A
_____
County, City

_____
State

_____
Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:   N/A
_____



**Wilbert Moore/Plaintiff Pro Se**
**747 10th Ave.  Apt./ 35A**
**New York, New York 10019**
**(212) 246-6356**

LEXSEE 2004 U.S. DIST. LEXIS 5338

**WILBERT MOORE, Plaintiff, -against- THE NEW YORK CITY DEPARTMENT
OF EDUCATION AND STUDENTS A, B, C, and D, Defendants.**

**03 Civ. 2034 (LAP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

*2004 U.S. Dist. LEXIS 5338*

**March 31, 2004, Decided
March 31, 2004, Filed**

**DISPOSITION:** [*1] Defendant's motion to dismiss
complaint granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For New York City Department of
Education, Defendant: Alexandra Standish, LEAD
ATTORNEY, Corporation Counsel of the City of New
York, New York, NY.

**JUDGES:** LORETTA A. PRESKA, United States
District Judge.

**OPINIONBY:** LORETTA A. PRESKA

**OPINION:**

   **MEMORANDUM AND ORDER**

LORETTA A. PRESKA, United States District Judge:

I. Background

   Plaintiff, Wilbert Moore ("Moore" or "Plaintiff")
was terminated from his employment as a teacher by the
New York City Department of Education ("Department
of Education" or "Defendant") on May 31, 2002. On
June 19, 2003, Mr. Moore filed an Amended Complaint
("Compl." or "Complaint") in which he alleges that the
Defendants defamed him and violated his constitutional
"right to due process," the "State Constitution," and
"State Penal Law." (Compl. PP 8-9). On July 21, 2003,
the Department of Education moved to dismiss Mr.

Moore's Complaint pursuant to *Fed. R. Civ. Proc.
12(b)(6).*

II. Standard under *Rule 12(b) (6)*

   In deciding a motion to dismiss, I must view the
Complaint in the light most favorable to the Plaintiff.
*Scheuer v. Rhodes, 416 U.S. 232, 237, 40 L. Ed. 2d 90,
94 S. Ct. 1683 (1974);* [*2] *Yoder v. Orthomolecular
Nutrition Inst., Inc., 751 F.2d 555, 562 (2d Cir. 1985).* I
must accept as true the factual allegations stated in the
Complaint, *Zinermon v. Burch, 494 U.S. 113, 118, 108 L.
Ed. 2d 100, 110 S. Ct. 975 (1990),* and draw all
reasonable inferences in favor of the Plaintiff. *Scheuer,
416 U.S. at 236; Hertz Corp. v. City of New York, 1 F.3d
121, 125 (2d Cir. 1993).* A motion to dismiss can only be
granted if it appears beyond doubt that the Plaintiff can
prove no set of facts in support of its claim which would
entitle them to relief. *Conley v. Gibson, 355 U.S. 41, 45-
46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).*

III. Discussion

   A. The Report

   The source of Mr. Moore's complaints is an
investigative report prepared by Chris Dalton, Chief
Investigator of the New York City Board of Education
("Board of Education") on April 16, 2002 ("Report"),
and subsequently shared with Mr. Moore, other members
of the Board of Education and the United Federation of
Teachers ("UFT"). (Compl. P 8.) Mr. Moore complains
that its preparation and dissemination defamed him and
violated state penal law and that his related termination
[*3] violated his constitutional rights. Mr. Moore quotes
at length from the Report:

**EXHIBIT 1**

2004 U.S. Dist. LEXIS 5338, *

It was alleged that Mr. Wilbert Moore, Teacher, grabbed a male student ("Student A") causing a scratch to his arm ... It was also alleged, on that same day, the Mr. Moore grabbed another male student ("Student A") by the neck, choked and pushed him ... Mr. Wilbert Moore, Teacher, has been assigned to the New School for Arts and Sciences (NSAS) since September 2001. Mr. Moore has seven corporal punishment allegations lodged against since being assigned to NSAS. A review of those case files disclosed that the former principal was instructed to investigate those allegations and submit his findings to OSI. For whatever the reason, those case were not investigated by the former principal. Therefore, the A-420's were not submitted to OSI. A further review of those case files indicates that follow up letters were sent to NSAS requesting the A-420's for those cases be submitted to OSI. However there was no response. Mr. Moore also had one sexual harassment allegation lodged against him while at NSAS. That allegation was unsubstantiated ... Mr. Moore has no criminal record ... On January 17, 2002, this [*4] investigator visited NSAS and interviewed the following students in the presence of Gertrude Karabas, Principal. Student A, 14 year old male, 8th grade, said that Mr. Moore was covering for an absent teacher and had shown a video to the class. Student A said that Mr. Moore thought that the he was going to take the video tape from the VCR and grabbed his arm. Student A said that as a result of being grabbed by Mr. Moore, he sustained a scratch to his arm. Student A said that the school nurse treated him. Student B, 13 year old male, 8th grade, said that he did not witness an incident between Student A and Mr. Moore. Student C, 14 year old male, 8th grade, said that he witnessed Mr. Moore grab Student A by the arm. Student C said that he observed a scratch on Student A's arm after he was grabbed by Mr. Moore ... Student A, 13 year old male, 8th grade, said that when Mr. Moore covered the class for an absent teacher, he showed the students a video. Student A said that when he pushed the

fast foward button twice, Mr. Moore pushed him twice. Student A said he then picked up a chair to "scare" Mr. Moore, not hit him. Student A said that Mr. Moore grabbed him by the neck and choked him. [*5] Student B, 13 year old female, 8th grade, said that when Student A pushed the fast foward button twice, Mr. Moore grabbed Student A by the chest and pushed him twice. Student B Said that when Student A picked upon a chair, Mr. Moore choked him. Student B said that she thought the Mr. Moore was going to hit Student A, but he did not. Student C, 13 year old female, 8th grade, said that when Student A pushed the fast foward button, Mr. Moore grabbed him by the arm and pushed him into th radiator. Student C said that when Student A picked up a chair if to hit Mr. Moore, Mr. Moore choked Student A with one hand and went to hit him with his other hand, but he did not. Student C said that on that same day, when Student D wen to rewind the video, she observed Mr. Moore grab Student D and push him into his chair. Student D, 13 year old male, 8th grade, said that when he fast-forwarded the videotape, Mr. Moore pushed him into his chair. Student D said that he did not report this incident to anyone Concerning the incident between Student A an Mr. Moore, Student D said that Student A was "playing around in class and Mr. Moore grabbed him by the neck and pushed him.

(Compl. P 8, errors [*6] in original.)

### 1. The Report

The Report is attached to the Complaint as Exhibits 3-7. As Mr. Moore alleges, it contains various statements made by Mr. Dalton which recount his interviews with various students who are physically described, but are otherwise designated as "Student A," "Student B," "Student C," and so on. The Report also contains Mr. Dalton's conclusion that "allegations that Mr. Moore, CPT Teacher engaged in acts of corporal punishment are substantiated through student and staff interviews." (Ex. ).

### 2. Defamation Claims

Mr. Moore complains that he was "libeled" and "defamed" when the Report was "published," in that it was given to Thomas W. Hyland, Deputy Director of the Board of Education, by Mr. Dalton, when it was included

**EXHIBIT 2**

with one or more letters Elenor Radzivilover, Director of Labor Relations for the Superintendent of Alternative, Adult and Continuing Education, sent to Mr. Moore, and when Ms. Radzivilover provided a copy of it to a Bronx UFT Representative, David Schulman, who represented Mr. Moore at the May 2, 2002, conference held to allow Mr. Moore to respond to the allegations contained in the Report.

To the extent Mr. Moore complains of Ms. Radzivilover [*7] dissimination of the Report to him and to his UFT representative, that complaint is without merit. Providing Mr. Moore and his representative with a copy of the Report, in advance of a hearing during which he was to answer allegations contained within it, was necessary to his defending against such allegations and does not give rise to a claim of defamation.

To the extent Mr. Moore complains that Mr. Dalton's dissimination of the Report to Mr. Hyland or the Department's internal dissimination of it, that claim is not actionable. New York law protects as privileged communications made among persons who have a common interest in the subject matter. See *Foster v. Churchill, 87 N.Y. 2d 744, 751, 665 N.E.2d 153, 642 N.Y.S.2d 583 (1996)* Here, it is uncontrovertible that employees of the Department of Education have a common interest in protecting students and in investigating and reporting allegations of, inter alia, corporal punishment of students. Accordingly, Mr. Dalton's dissimination of the Report to his superiors and the Department's limited internal dissimination of the Report were privileged under the common interest privilege, and plaintiff makes no claim that dissimination was beyon that authorized [*8] by the privilege. Accroindgly, the defamation claim is dismissed.

3. Other State Law Claims

*New York General Municipal Law § 50-e*, requires that a notice of claim set forth, among other things, "the nature of the claim" and "the time when, the place where and the manner in which the claim arose." Mr. Moore's Notice of Claim, filed February 27, 2003, provides the following:

> The Employees and members of the New York City Board of Education and Students A, B, C, and D, are responsible for libeling and defaming Claimant Wilbert Moore and conducting an alleged inchoate unconstitutional conspiracy against claimant causing the termination of claimant's employment from the New School for Arts and Science. The New School for Arts and Science is located at 965 Longwood Ave. Bronx, NY 10459. As a direct result of the New School's false statements and subsequent termination, claimant is making a claim against the City of New York to recover nominal, compensatory and punitive damages as well as damages for emotional distress and the loss of pension and back pay.

Id.

However, the Appellate Division has rejected similar descriptions as insufficient. [*9] For example, in *Kasachkoff v. City of New York, 107 A.D. 2d 130, 132-34, 485 N.Y.S.2d 992 (1st Dep't 1985)*, aff'd, *68 N.Y. 2d 654, 496 N.E.2d 226, 505 N.Y.S.2d 67 (1986)*, a case in which the Notice of Claim provided that "on January 26, 1981, the claimant was defamed by employees of Health and Hospitals Corporation, Bellevue Hospital and City of New York at Bellevue Hospital by accusing claimant of alcoholism and being drunk," the court found the Notice of Claim to be insufficient:

> a notice of claim which assets that on a particular date, the time or approximate time not being specified, somewhere in the complex of buildings that constitute Bellevue Hospital, unnamed employees of the hospital made defamatory statements was not sufficient to give HHC that notice clearly contemplated by that statutory section.

Accordingly, based on *Kasachkoff*, Mr. Moore's Notice of Claim for his defamation claim is insufficient. Also, because that Notice of Claim failed to mention any other torts, other alleged tort claims are dismissed. See Amended Complaint, causes of action three, five and seven.

4. Due Process Claims

Mr. Moore complains that he was "unconstitutionally" terminated from his [*10] employment in that he was not "afforded the statutory due process provisions of the Chancellor's Regulation Number C-31 and or the Constitution of the United States" (Id. at P 8) and because of the "maliciously libelous and defamatory statements" contained in the Report. (Id. at P 8.)

Mr. Moore also complains that the Defendants "misused the due process procedure as outlined in the agreement between the [UFT] and the NYC Department of Education" in that the Department of Education is "guilty of using 'Laches' regarding the 3-step grievance

**EXHIBIT 3**

procedure" to his detriment because the process "should not have taken more then (error in original) 3 months to complete ... [but] took well over 8 months, thus almost precluding [him] from filing slander and defamation charges against the Defendants." (Id. at P 8)

Mr. Moore further asserts that "since the defendants did not prove that Plaintiff was indeed constitutionally terminated, the first steps of the grievance process cannot be validated without the aid of discovery and or a trial." and "since the statutory due process protocol of Chancellor's Regulation C-31 was not adhered to prior to [his] termination, and since [*11] the results of the steps of the Grievance Procedure are questionable," the "question of the legal right to arbitration should be addressed simultaneously with discovery or at trial."

Lastly, Mr. Moore asserts that "Defendants fraudulently misled [him] into thinking that he was terminated" and that "the Defendants conducted a limited hearing on or around May 2, 2002. Plaintiff was not given a final due process hearing as mandated in the Chancellor's Regulation Number C-31, nor was Plaintiff afforded the benefit of the Office of Appeals and Review's due-process protocol before allegedly being terminated," and that although "on May 2, 2002, the Defendant [sic] afforded [him] a hearing before unconstitutionally terminating him" they did not allow him "to call and question witnesses on [his] behalf or afford him a "final due process hearing before termination" as required by "the Chancellors protocol she was "denied his Constitutional Rights to due process before being unconstitutionally terminated." in violation of "the *fourteenth Amendment of the Constitution of the United States*."

First, Plaintiff received all the process he was due. The Department contends that plaintiff [*12] was a probationary employee at the time of his termination. See Exhibit 19 (plaintiffs exhibit discussing termination of service of non-tenured employees). Accordingly, plaintiff had no property interest in continued employment that would be protected under federal requirements of procedural due process. See *Canty v. Bd. of Educ., 470 F.2d 1111 (2d Cir. 1972)*, cert. denied, *412 U.S. 907, 36 L. Ed. 2d 973 (1973)*.

Even assuming that plaintiff was tenured -- and there is no record evidence to support that conclusion -- the Court of Appeals has held that *§ 1983* claims alleging violations of due process will not lie where the plaintiff had alternative remedies to protect his asserted property rights. *Giglio v. Dunn, 732 F.2d 1133, 1134 (2d Cir.)*, cert. denied, *469 U.S. 932, 83 L. Ed. 2d 265 (1984)*. In that case, the court rejected plaintiffs *§ 1983* claim that he was denied due process by not being afforded a hearing before being coerced into resigning. See id. The

Giglio court held that post resignation process available under *Article 78 of New York's CPLR* gave the employee a meaningful opportunity to [*13] challenge the voluntariness of his resignation and that the availability of an Article 78 proceeding provided plaintiff with all the process he was due. Id. Accordingly, that Court affirmed the dismissal of plaintiffs *§ 1983* claim for failure to state a claim. Id.

Here, Mr. Moore could have brought an Article 78 proceeding against the Department to enforce the rights he now, belatedly, and inappropriately, seeks to enforce in this Court. See also *Hudson v. Palmer, 468 U.S. 517, 530-32, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984)*; *Parratt v. Taylor, 451 U.S. 527, 537-38, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981)* (even where a plaintiff establishes that she was deprived of a property right without a pre-deprivation hearing, the existence of an adequate and meaningful state post-deprivation hearing may be sufficient to satisfy the procedural component of the *Due Process Clause)*; *Corredor v. United Fed'n of Teachers, 1998 U.S. App. LEXIS 22352 (2d Cir. 1998)*. Accordingly, no due process claims lies.

Second, even if a due process claim were available, Mr. Moore did receive a hearing and is pursuing further contractual rights. Plaintiff's claims of due process violation [*14] are contradicted both by his own Amended Complaint and by the exhibits attached to his own complaint, which note that plaintiff had a hearing before he was terminated and was represented at this hearing by an official from his union. Amended Complaint, (at page 10) (acknowledging that plaintiff went through the grievance process); Exhibit 9 (attached to amended complaint). Plaintiff was given an opportunity to address the allegations made against him; however, plaintiff failed to deny or explain the events described in the OSI Report. See Exhibit 9. To the extent plaintiff believes that the hearing officer reached an erroneous conclusion, plaintiff could have challenged the results at an Article 78 proceeding. See *Giglio, 732 F.2d at 1134*.

Finally, even plaintiffs own documents indicate that his union is in the process of scheduling an arbitration hearing on his claims. Exhibit 24. As such, it appeas that Mr. Moore is receiving due process both in the courts and in the arbitral forum.

2. New York Penal Law

Plaintiff also purports to assert claims under *New York Penal Law § 175.40* and *§ 195.00*. See Amended Complaint, at page [*15] 9. These claims must be dismissed because plaintiff has set forth no authority to support his claim that a private right of action to enforce rights allegedly created by these provisions exists. See *Tourge v. City of Albany, 285 A.D.2d 785, 727 N.Y.S.2d*

**EXHIBIT 4**

2004 U.S. Dist. LEXIS 5338, *

*753, 756 (3d Dept. 2001)* (setting for test for determining if private right of action exists and holding that there is no private right of action under *§ 195.00 of the Penal Law*).

CONCLUSION

For the reasons set out above, the Defendant's motion to dismiss the Complaint is granted. As this disposes of all claims in this matter, the Clerk of the Court shall mark this matter closed and all pending motions denied as moot. Judgment may be entered accordingly.

SO ORDERED.

March 31, 2004

LORETTA A. PRESKA, U.S.D.J.

**EXHIBIT 5**



```
DEPARTMENT CASE NO. OLR # 17312
UNION CASE NO. UFT # X19982
-------------------------------------X
In The Matter of Arbitration
Between the                          X
                                          Re: Wilbert Moore
THE NEW YORK CITY DEPARTMENT         X       Letter of
OF EDUCATION                                 May 20, 2002
                                     X

                    "Department"     X

          -and-                      X

UNITED FEDERATION OF TEACHERS        X
LOCAL 2, AFT, NYSUT, AFL-CIO         X

                    "Union"          X

-------------------------------------X
```

**APPEARANCES**

> <u>FOR THE DEPARTMENT OF EDUCATION</u>
> Frank Capaldo, Department Advocate
>
>
> <u>FOR THE UNION</u>
> Micahel Friedman, Union Advocate
> Gary Rabinowitz, Special Representative
> Wilbert Moore, Grievant

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

**EXHIBIT 6**

24

## OPINION

Pursuant to the parties' Collective Bargaining Agreement ("Agreement"), I was designated to hear and determine the merits of the Union's grievance seeking the elimination of material contained in Wilbert Moore's file dated May 20, 2002.

A hearing was held on November 21, 2003, at the Offices of the Union in Manhattan, New York.  At that time, both parties were afforded full opportunity to introduce evidence and argument in support of their respective positions.  They did so.

The basic dispute to be decided pursuant to the parties' Agreement is:

> **Whether the material in the file, which is the subject of the grievance, is either unfair or inaccurate within the meaning of the Agreement?**

> **If so, what shall be the remedy?**

After reviewing the evidence and argument submitted, I make the following rulings:

1.  The letter of May 20, 2002, shall be deleted from Wilbert Moore's file because it is unfair and inaccurate as these terms have been defined by the parties.

2                    EXHIBIT 7

25

**AWARD**

1.   I hereby determine UFT Case # X19982 and OLR Case # 17312
     regarding the letter of May 20, 2002, in Wilbert Moore's
     file in accordance with my Opinion above.

February 2 3 , 2004.

_____
Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NASSAU           )

     I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as
Arbitrator that I am the individual described herein and who
executed this instrument, which is my Award.

February 23, 2004.

_____
Martin F. Scheinman, Esq.
Arbitrator

**EXHIBIT 8**

3

## USC Title 9 Federal Arbitration Act (FAA)

### § 9. Award of arbitrators; confirmation; jurisdiction; procedure

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.  If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court.  If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

### § 10. Same; vacation; grounds; rehearing

(a) in any of the following cases the United States Court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration-
(1) where the award was procured by corruption, fraud, or undue means;  (2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
(c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

### §11. Same; modification or correction; grounds; order

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration-
(a) Where there was an evident material miscalculation of the figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b) A matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.  The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

### §12. Notice of motions to vacate or modify; service; stay of proceedings

Notice of motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.  If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court.  If the adverse party shall be a nonresident then the notice of application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.  For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make and order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

**EXHIBIT 9**

## Rules 60(a) and 60(b) Notice of Motion for Relief from Judgment (Feb. 9, 2005)
## 03 Cv 2034 (LAP)

**Affirmation:**

**PLEASE TAKE NOTICE THAT** upon the affirmation of Plaintiff Pro Se Wilbert Moore, dated February 9, 2005, and upon all the pleadings and proceedings heretofore had herein, Plaintiff Pro Se Wilbert Moore, will move this Court, located on the 12th Floor at 500 Pearl Street, New York, New York 10007, on Friday, March 4, 2005, at 9:30 a.m., or as soon thereafter as counsel may be heard, for, pursuant to the Federal Rules of Civil Procedure's Rule 60(a), for the relief from judgment or order. Plaintiff is alleging the following; pursuant to Rule 60(a) of the Federal Rules of Civil Procedure (FRCP) Plaintiff filed this instant motion because Plaintiff would like to have the Court correct a clerical error regarding the lack of the Confirmation of the Award of Arbitrator Scheinman of the American Arbitration Association (AAA).

2. Please find enclosed as Exhibit 1, a copy of Page 7 of the Official Court Transcript recorded in your Courtroom on May 16, 2003, as exhibits 2, 3, and 4, a 3-page copy of Arbitrator Scheinman's Award, and as exhibits 5 and 6, a 2-page copy of the NYC Department of Education's (DOE) letter of termination.

3. According to **"Barron's Law Dictionary,"** the terms **"Award"** and **"Confirmation"** mean, and I quote; <u>"The decision of the arbitrator (the counterpart of a court's order or judgment) is called the AWARD. A Court order enforcing an arbitrator's award is called CONFIRMATION."</u> End quote.

4. On or around February 23, 2004, the American Arbitration Association's (AAA) Arbitrator Martin F. Scheinman, Esq. ruled in my favor in his Award that officially removed the NYC Department of Education's (DOE) defamatory letter of termination dated May 20, 2002, from my personnel file. Arbitrator Scheinman, Esq. stated the following in his Award, and I quote; <u>"1. The letter of May 20, 2002, shall be deleted from Wilbert Moore's file because it is unfair and inaccurate as these terms have been defined by the parties."</u> End quote (See exhibits 2, 3, and 4). The above mentioned unfair and inaccurate letter Arbitrator Scheinman, Esq. referred to in his Award was my letter of termination that falsely accused me of using Corporal Punishment. The above-mentioned defamatory letter of termination was signed and executed by DOE Attorney Elenor Radzivilover (See exhibits 5 and 6).

5. In the first paragraph of the above-mentioned letter of termination signed by DOE attorney Radzivilover, it states the following, and I quote; <u>"Dear Mr. Moore, The Office of Special Investigations has substantiated allegations of corporal punishment as follows: 1. CPU Log # 02-0178 – You grabbed a male student causing a scratch to his arm. 2. CPU Log # 02-0180 – You grabbed another student by the neck, choked and pushed him."</u> End quote. Arbitrator Scheinman, Esq. stated in his Award that my letter of termination is unfair and inaccurate.

6. <u>Rule 9(e)</u> of the FRCP states, and I quote; <u>"Rule 9. Pleading Special Matters (e) Judgment. In pleading a judgment or decision of a domestic or foreign court,</u> <u>judicial or quasi-judicial tribunal, or of a board or officer, it is sufficient to aver the judgment or decision without setting forth matter showing jurisdiction to render it."</u> End quote.

7. I officially informed the Federal District Court and the DOE of Arbitrator Scheinman's ruling in a Rule 60(b) Motion I submitted to you on or around April 27, 2004. In my opinion, Pursuant to the above-mentioned Rule 9(e) of the FRCP, if Arbitrator Scheinman concluded that I did not commit corporal punishment, then Arbitrator Scheinman's opinion should have been considered and confirmed in your March 31, 2004, rulings as a decision from a <u>"quasi-judicial tribunal."</u> However, no mention was made of Arbitrator Scheinman's opinion in any of your rulings or orders.

8. In my opinion, on or around March 31, 2004, you dismissed my Amended Complaint before you knew the results of my forthcoming arbitration. A forthcoming arbitration you and the DOE were aware of. The documented proof of the Court and the DOE's awareness of my then forthcoming Arbitration can be found in the Official Court Transcript on page 7, lines 13, to 17 (See exhibit 1). The Court's Record shows that you stated the following, and I quote: <u>"13. THE COURT: Also, sir, if your union is representing you in an arbitration arising out of your termination, it might be that you have a right to ask for that information in the arbitration. I do not know that, but it might be that you do."</u> End quote. The above referred to arbitration was held at the UFT's Headquarters on November 21, 2003. At our November 21, 2003, arbitration, we asked for, but we never received, the information you referred to in the above quotation.

9. On or around April 27, 2004, I officially informed the Court and the DOE of Arbitrator Scheinman's Award by submitting a Rule 60(b) Motion to the Federal District Court. In my opinion, the Court erroneously rushed to judgment by dismissing my complaint before the Award of Arbitrator Scheinman's was officially considered and confirmed. In my opinion, pursuant to the above-mentioned definition of "Confirmation", Arbitrator Scheinman's Award should have been, or should now be, considered as the prevailing "Court Order" or "Judgment" because it was dated and handed down prior to your March 31, 2004, dismissal.

10. Rule 60 of the Federal Rules of Civil Procedure states the following, and I Quote; <u>"Rule 60. RELIEF FROM JUDGMENT OR ORDER (a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."</u> End quote.

11. Arbitrator Scheinman presented his Award before you Officially dismissed my case. In my opinion, pursuant to the FRCP's above-quoted Rule 60(a), the Courts' failure to officially acknowledge that Award should be deemed a clerical error that can be, and should be, corrected by the Court on its own initiative or by this instant motion. Plaintiff is filing this instant Rule 60(a) Motion to officially ask this Court to Confirm the Award of Arbitrator Scheinman Esq.. Respectfully submitted, Wilbert Moore

**Dated February 9, 2005**

**EXHIBIT 10**

## Cheng v David Learner Assoc., Inc.

[*1] Cheng v David Learner Assoc., Inc. 2012 NY Slip Op 51035(U) Decided on June 6, 2012 Supreme Court, Kings County Velasquez, J. Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431. This opinion is uncorrected and will not be published in the printed Official Reports.........................

## Decided on June 6, 2012, Judge Velasquez, Supreme Court, Kings County

The revocation of any contract." Arbitration agreements, however, are not absolute, there is a clear judicial policy in favor of arbitration. The Appellate Division, Second Department has held that arbitration is considered "an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process." Maross Const., Inc. v. Cent. New York Reg'l Transp. Auth., 66 NY2d 341, 345, 488 N.E.2d 67 (1985) (internal citations omitted). To establish this policy, Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Section two places arbitration agreements on equal footing with all other contracts, "A written provision in...a contract...to settle by arbitration a controversy thereafter arising out of such contract...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for and may be challenged as invalid and unenforceable..................................................

According to the Supreme Court, challenges to the validity of arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract" can be divided into two types: (1) a challenge to the specific agreement to arbitrate and (2) a challenge to the contract as a whole. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444, (2006). Plaintiffs David and Amy Cheng have [*3]raised both challenges, both of which are discussed in turn.

### Is the Arbitration Agreement Itself Valid?

However, subsequent case law, including a United States Supreme Court decision directly on point, has expressly determined a claim of fraud in the inducement to enter into a contract containing an arbitration clause is to be resolved by arbitrators, and not the courts. Prima Paint Corp v Flood & Conklin Mfg. Co., 388 U.S 395, 403-404 (1967). Further, the case on which Plaintiff's rely, Weinrott, is distinguishable from this case because it stands for the proposition that as a "general rule" under a broad arbitration provision, the claim of fraud in the inducement should be determined by the arbitrators. 190 at 199. As stated above, this court has already found the arbitration clauses in the agreements at issue to be broad. Therefore it follows that the fraudulent inducement claims should be decided by an arbitrator...........................

Plaintiff correctly notes that New York statute CPLR 7503 states that the court must decide whether there is a substantial question as to whether a valid agreement was made. Nevertheless, the New York Court of Appeals noted in Weinrott that adopting a policy in favor of arbitration is "consistent with the policy adopted by the Federal courts, and is significant since the Federal arbitration statute is almost identical to, and is derived from [New York's] arbitration statute." Id at 198. Moreover, in 2006 the Supreme Court held in Buckeye Check Cashing, Inc. V Cardegna that "even in the context of state-law claims brought in state court, the FAA created a body of federal substantive law which applies in both state and federal courts and state law cannot bar enforcement." 546 U.S. 440, 1209 (2006)(internal citations omitted). While plaintiff has not raised the issue of whether state or federal law applies in this case, it is important to note that this court must rule on this issue in accordance with the U.S. Supreme Court.

EXHIBIT 11

# A Void Judgment lack's jurisdiction

A court must vacate any judgment entered in excess of its jurisdiction." (Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645 (1st Cir. 1972).). The U.S. Supreme Court, in Scheuer v. Rhodes, supra, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) "A court must vacate any judgment entered in excess of its jurisdiction." (Lubben v. Selective Service System Local Bd. No. 27, supra, 453 F.2d 645 (1st Cir. 1972).).

" A judgment is void on its face if the trial court exceeded its jurisdiction by granting relief that it had no power to grant. Jurisdiction cannot be conferred on a trial court by the consent of the parties." (Summers v. Superior Court (1959), supra,; Roberts v. Roberts (1966) supra, ) Thus, the fact that a judgment is entered pursuant to stipulation does not insulate the judgment from attack on the ground that it is void. In People v. One 1941 Chrysler Sedan (1947) 81 Cal. App. 2d 18, 21-22 [183 P.2d 368]

Whenever a judge acts where he/she does not have jurisdiction to act, they are warring on the constitution, i.e., the judge is engaged in an act or acts of treason. The U.S. Supreme Court, in Scheuer v. Rhodes, supra, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980 ); Cohens v. Virgina 19 U.S. (6 Wheat) 264 (1921. See: Cooper v. Aaron, 358 U.S. 1,78 S.Ct. (1401 1958. Therefore, without authority or jurisdiction, a judge loses absolute immunity and is subject to a lawsuit.

The Court Has A Responsibility To Correct a Void Judgment. The statute of limitations does not apply to a suit in equity to vacate a void judgment. (Cadenasso v. Bank of Italy, p. 569; Estate of Pusey, 180 Cal. 368, 374 [181 P. 648].) This rule holds as to all void judgments. In the other two cases cited, People v. Massengale and In re Sandel, the courts confirmed the judicial power and responsibility to correct void judgments.

Under Federal law, which is applicable to all states, the U.S. Supreme Court stated that if a court is "without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered, in law, as trespassers." Elliot v. Piersol, 1 Pet. 328, 340, 26 U.S. 328, 340 (1828). When judges act when they do not have jurisdiction to act, or they enforce a void order (an order issued by a judge without jurisdiction), they become trespassers of the law, and are engaged in treason.

Whenever a judge acts where he/she does not have jurisdiction to act, the judge is engaged in an act or acts of treason. U.S. v. Will, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821).

**EXHIBIT 12**